THALLE CONSTRUCTION
CO., INC., Plaintiff,

v.

The WHITING–TURNER
CONTRACTING CO.,
Defendant.

No. 91 Civ. 869 (JSR).

United States District Court,
S.D. New York.

Nov. 13, 1996.

Judith F. Herman, Braude & Margulies, White Plains, NY, James S. Morris, White Plains, NY, for Thalle Construction Co., Inc.

Judith Berman, Berman, Paley, Goldstein & Kannry, New York City, for Whiting–Turner Contracting Company, Inc.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

RAKOFF, District Judge.

Problems and delays encountered in the construction of the IBM Customer Executive Education Center in Palisades, New York have given rise to substantial litigation, of which this is the latest chapter. *See, e.g., Thalle Construction Co., Inc. v. Whiting–Turner Contracting Co., Inc.,* 39 F.3d 412 (2d Cir.1994); *Wolff & Munier, Inc. v. Whiting–Turner Contracting Co.,* 946 F.2d 1003 (2d Cir.1991). In 1991, plaintiff Thalle Construction Co., Inc., the subcontractor for the earthwork/site utilities, paving, structural earthwork and drainage portions of the IBM project, sued the general contractor, Whiting–Turner Contracting Co., to recover damages for delays. Whiting–Turner, in turn, counterclaimed for delay damages and other

costs attributed to Thalle. The action was initially tried in 1991 before the Honorable Gerard Goettel, who issued Findings of Fact and Conclusions of Law (variously, "Findings" and "Conclusions") that assessed damages against Whiting–Turner in the amount of $602,588, Conclusions ¶ 2, and against Thalle in the amount of $399,147. Conclusions ¶ 23.

On appeal, the Court of Appeals affirmed the district court's factual findings, *Thalle,* 39 F.3d at 415, but reversed as to Thalle's damages, holding that the district court erred in declining to apply the "total cost" measure of damages. The appellate court's view was that "[t]he total cost approach, however onerous it may be to apply in this case, is nonetheless required under New York law." *Thalle,* 39 F.3d at 419.

Accordingly, after the case was reassigned to this Court on March 1, 1996, the Court conducted a four-day evidentiary hearing on May 24 and 31 and June 5 and 6, 1996 as to the proper calculation of damages under the total cost approach. After reviewing that evidence, making appropriate credibility determinations, and considering the substantial written submissions and oral arguments of counsel, the Court hereby renders its findings and conclusions.

*Findings of Fact and Conclusions of Law*

█ 1. Pursuant to Judge Goettel's findings, Thalle may not claim damages for any pre–1987 delays. Findings ¶ 15. For the period from January 1, 1987 onwards, Thalle's total job costs were $5,469,087,[1] and it received payments from Whiting–Turner of $2,959,220. *See* PX 100.[2] Thus, there was a loss (excluding any lost profits or overhead) for this period of *$2,509,867.* Under the total cost approach, the question then is what portion of this loss is attributable to delays caused, directly or indirectly, by defendant. Given the way the proof was developed at the evidentiary hearing, however, the first step toward obtaining this answer is to deduct from the net loss figure of $2,509,867 those

costs attributable to Thalle or third parties or not shown to be attributable to Whiting–Turner.

2. Plaintiff does not contest that certain rock excavating costs must be deducted. The Court finds these to be *$109,593.* PX 100A; Findings ¶ 34(f).

3. While plaintiff calculates that only 33.5 hours of paid labor time were lost because of inclement weather, *see* PX 100B, defendant has established to the Court's satisfaction that bad winter weather resulted in substantial additional losses. *See, e.g.,* Tr. 5/31/96 at 173–76. Taking the additional hours of lost labor, unused equipment, and other costs into consideration, the Court finds that inclement weather costs must be deducted in the amount of *$123,151. See* Findings ¶ 34(e).

4. Plaintiff does not contest that certain costs of repairing the sanitary sewers must be deducted. The Court finds these costs to be *$9,883.* PX 100C; Findings ¶ 34(b).

5. The Court finds that the cost of excavation errors by Thalle that must be deducted is *$18,365.* PX 100D; Findings ¶ 28.

6. Plaintiff does not contest that certain costs of labor escalation at Dam A must be deducted. The Court finds these to be *$1,795.* PX 100E; Findings ¶ 33.

7. At the hearing before this Court, Thalle failed to prove that any additional costs associated with its paving activities were caused by Whiting–Turner. According to Thalle's summary of accounts, DX 1004, Thalle spent approximately $900,000 on paving materials alone, whereas it had expected to spend $900,000 for *all* of the costs associated with the paving, including labor and equipment. DX 1003. At the hearing, the president of Thalle, George Pacchiana, testified that materials constituted approximately eighty percent of the total cost of paving, while Harvey Ramsdell, the Whiting–Turner project manager, testified that the rule of thumb is that total paving costs are normally approximately twice the cost of materials. Tr. 6/5/96 at 77. Thus, under Pacchiana's

---

1. All figures are rounded to the nearest dollar.

2. "PX" refers to plaintiff's exhibits, and "DX" to defendant's exhibits, at the hearing before this

Court. References to the transcript of that hearing ("Tr.") include both date and page numbers.

estimate, Thalle suffered a cost overrun of $200,000 on paving while, using Ramsdell's estimate, the overrun was $900,000. Regarding both these numbers as extreme, the Court finds that the reasonable amount of overrun of paving costs that must be deducted is *$600,000*.

8. At the hearing Whiting–Turner established to the Court's satisfaction that Thalle very substantially inflated the amounts charged for equipment used at the IBM project. Some of the overcharges were a result of Thalle's insufficiently-disclosed practice of spreading its costs of maintaining company-owned equipment among all of its ongoing jobs regardless of their status. Thus, as Joseph Pierorazio, a Thalle witness, testified, even at the end of December 1987, when the IBM project was 95% complete and Thalle had some twenty other construction projects ongoing, Thalle was still allocating approximately 25% of its company-wide equipment expenses to the IBM project. DX 1023. Other overcharges resulted from the fact that Thalle parked greater numbers of equipment at the IBM project than were actually used, a practice that Thalle was unable to justify to this Court's satisfaction. Taking account of these findings and of the parties' post-hearing submissions on these points,

*see, e.g.,* Whiting–Turner's Post–Hearing Submission at 4–9, the Court finds that Thalle's total costs should be reduced by equipment overcharges in the amount of *$800,000*.

9. Labor unrest and union difficulties also contributed to the cost overruns experienced by Thalle. The unanticipated cost of a non-productive Teamster steward was itself $100,000. DX 1000. Moreover, the diary kept by Thalle's project manager, Alfred Luciano, is replete with references to substantial labor difficulties at the project. PX 1A. While Mr. Luciano testified at the hearing that the costs associated with these difficulties were minimal, Harvey Ramsdell, the Whiting–Turner project manager, estimated that Thalle suffered a 25% loss of efficiency as a result of these labor problems. Striking a reasonable balance on the basis of all the evidence before it and reasonable extrapolations therefrom, the Court finds that labor difficulties, including the unexpected salary for the Teamster steward, require a reduction in Thalle's total costs of *$600,000*.

10. Subtracting the deductions described above from Thalle's net loss for the delay period produces the following:

| | |
|---|---|
| NET LOSS FOR THE DELAY PERIOD: | $2,959,220 |
| DEISDUCTIONS: | |
| Rock excavating | $ 109,593 |
| Inclement weather | 123,151 |
| Sanitary sewer repair | 9,883 |
| Excavation errors | 18,365 |
| Dam A labor escalation | 1,795 |
| Paving cost overruns | 600,000 |
| Equipment overcharges | 800,000 |
| Labor and union difficulties | 600,000 |
| NET DELAY LOSS LESS DEDUCTIONS: | $ 696,433. |

11. Without burdening the record further with the evidence of Whiting–Turner's responsibility for the remaining delays, *see* Judge Goettel's Findings and Conclusions and also *Thalle,* 39 F.3d at 415–16, the Court finds that the entire remaining amount of delay loss, *i.e.* $696,433, is attributable to Whiting–Turner, directly or (as with certain IBM delays) indirectly. Further, on the approach here taken, it becomes irrelevant whether, as Judge Goettel indicated on his approach, the delay attributable to Whiting–Turner translates into a specified number of months' delay: as the Court of Appeals stated, this finding is of "less consequence" to the calculation of damages on a cost-based method. *Thalle,* 39 F.3d at 416. However,

the fact that the Court's cost-based calculation of $696,433 is not vastly different from Judge Goettel's period-of-delay-based calculation of $600,000 tends to corroborate its reliability.

12. Further, while the Court finds that it is appropriate to consider an allowance for profit and overhead, *Thalle,* 39 F.3d at 417–18, upon such consideration the Court concludes that such an allowance is properly disallowed pursuant to Article 6(d) of the subcontract, PX 2, as well as by equitable considerations. Findings ¶ 51.

13. Thus, Thalle is entitled to recover $696,433 for losses attributable to Whiting–Turner's delays. To this must be added an additional $2,588 due Thalle that was not contested on the remand from the Court of Appeals, bringing the total to $699,021. From this, however, there must be subtracted the $339,147 due Whiting–Turner on its counterclaim, which likewise was not challenged on remand—thus reducing the total due Thalle to $359,874.

14. As for interest, the Court finds it should run from March 1, 1988, which is a reasonable intermediate date between the official subcontract completion date of May 31, 1987 and the actual subcontract completion date of November 30, 1988. *See* N.Y. CPLR § 5001(b).

15. Thus, Thalle is entitled to judgment in the amount of *$359,874,* together with interest thereon at the rate of nine percent per annum from March 1, 1988 to the date of judgment.

Clerk to enter judgment.

SO ORDERED.